IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARC J. MURI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NATIONAL INDEMNITY COMPANY,<br><br>Defendants. | 8:17-CV-178<br><br>MEMORANDUM AND ORDER |

The plaintiff, Marc Muri, is suing his former employer, National Indemnity Company, for allegedly breaching the fiduciary duties owed to him, and all others similarly situated, under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq*. National Indemnity has moved to dismiss the complaint for failure to state a claim for which relief can be granted. Filing 25. For the reasons discussed below, the Court will deny National Indemnity's motion to dismiss.

BACKGROUND

Muri's allegations are summarized as follows. Muri was employed by National Indemnity, an insurance provider located in Omaha, Nebraska. Filing 1 at 7. During his employment, Muri participated in National Indemnity Company's Employee Retirement Savings Plan ("the Plan"). Filing 1 at 2. The Plan, in essence, allows participating employees to contribute a portion of their salary, which National Indemnity then matches, towards individual retirement accounts. Filing 1 at 8. Participants do so by choosing from a variety of fund options, all of which offer different investment styles

and risk profiles, in which to invest their contributions. Muri elected to invest in the Sequoia Fund. Filing 1 at 2; *see also* filing 27-4 at 2.

Generally speaking, the Sequoia Fund is a non-diversified, long-term growth mutual fund managed by Ruane, Cunniff & Goldfarm, Inc. Filing 1 at 2, filing 1 at 11; filing 1 at 13. The Sequoia Fund invests in "common stocks it believes are undervalued at the time of purchase and have the potential for growth." Filing 1 at 13. And it sells common stocks "when the company shows deteriorating fundamentals . . . or its value appears excessive relative to its expected future earnings." Filing 1 at 11.

But as Muri alleges, the Sequoia Fund was, as of January 2015, no longer a prudent investment option. Filing 1 at 4. To that end, Muri contends the Sequoia Fund violated its own "value policy" by over-concentrating its investments in one, high risk stock: Valeant Pharmaceuticals. Filing 1 at 3; *see also* filing 1 at 2. In essence, Valeant's business model is to acquire various competitors and products, then drastically cut research and development costs in an effort to boost profits. Filing 1 at 16.

According to Muri, Valeant's acquisition strategy, along with its accounting practices, began raising "red flags" around the industry. *See* filing 1 at 16-17. Specifically, investors began questioning Valeant's "cash earnings per share" accounting method, which appeared to vastly overstate Valeant's net income. Filing 1 at 18. And suspicions also arose surrounding Valeant's stock price which, at its peak, had a trade value almost ninety-eight times higher than its previous year's earnings. Filing 1 at 17. As a result, Valeant became the subject of intense scrutiny by investors, analysts, and elected officials. *See* filing 1 at 22-26. Despite that skepticism, however, Sequoia Fund managers allegedly refused to diminish the Fund's concentration in Valeant stock, and instead, acquired more. *See* filing 1 at 24.

In October 2015, Valeant's stock price fell dramatically, and by November 2015, Valeant had lost more than $65 billion in market value. Filing 1 at 27. This, in turn, caused the Sequoia Fund to lose approximately twenty five percent of its value—vastly diminishing the retirement account of Muri, and other Plan participants, who had invested in the Fund. *See* filing 1 at 27.

It is with that backdrop that this litigation ensued. Muri claims that from January 1, 2015, through the date of judgment in this action (the "Class Period"), National Indemnity violated the fiduciary duties it owed to Muri, and other Plan participants by: (1) failing to prudently manage the Plan by offering "shortsighted" investment options, such as the Sequoia Fund; and (2) failing to avoid conflicts of interest in choosing its investment options, specifically those with close relationships to its parent company—Berkshire Hathaway. Filing 1 at 34-37.

## STANDARD OF REVIEW

National Indemnity has moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) and (b)(6). Filing 25.

### RULE 12(B)(1)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges whether the court has subject matter jurisdiction. The party asserting subject matter jurisdiction bears the burden of proof. *Great Rivers Habitat Alliance v. FEMA*, 615 F.3d 985, 988 (8th Cir. 2010). And Rule 12(b)(1) motions can be decided in three ways: at the pleading stage, like a Rule 12(b)(6) motion; on undisputed facts, like a summary judgment motion; and on disputed facts. *Jessie v. Potter*, 516 F.3d 709, 712 (8th Cir. 2008).

A court deciding a motion under Rule 12(b)(1) must distinguish between a "facial attack'" and a "factual attack." *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th Cir. 2015). In a facial attack, the Court merely needs to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction. *Id.* Accordingly, the Court restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)—that is, the Court accepts all factual allegations in the pleadings as true and views them in the light most favorable to the nonmoving party. *Id.*; *Hastings v. Wilson*, 516 F.3d 1055, 1058 (8th Cir. 2008).

Conversely, in a factual attack, the existence of subject matter jurisdiction is challenged in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, may be considered. *Branson Label*, 793 F.3d at 914. Thus, the nonmoving party would not enjoy the benefit of the allegations in its pleadings being accepted as true by the reviewing court. *Id.* But factual challenges do not arise only when a court considers matters outside the pleadings. *Faibisch v. Univ. of Minnesota*, 304 F.3d 797, 801 (8th Cir. 2002). A district court engages in a factual review when it inquires into and resolves factual disputes. *Id.* This case presents a factual attack. *See* filing 27.

RULE 12(B)(6)

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements

4

of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief. *Id.* at 679.

Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Twombly*, 550 U.S. at 545. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

## DISCUSSION

Generally speaking, Muri's complaint alleges two separate, yet related, claims for relief under ERISA. First, Muri claims National Indemnity breached the duty of prudence in violation of 29 U.S.C. § 1104(a)(1)(B), which requires a fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like

5

capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." Second, Muri claims National Indemnity breached the duty of loyalty, *see* 29 U.S.C. § 1104(a)(1)(A), which requires a fiduciary to act for the exclusive purpose of "providing benefits to participants and their beneficiaries." National Indemnity moves to dismiss both claims, arguing (1) that Muri lacks Article III standing, and (2) Muri has failed to plausibly demonstrate a breach of a fiduciary duty under ERISA.

STANDING

National Indemnity first contends that Muri lacks standing to sue. Federal courts have subject-matter jurisdiction only over cases in which the plaintiff "satisf[ies] the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). In other words, federal courts have no jurisdiction over cases in which the plaintiff lacks standing to bring the complaint. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). The irreducible minimum of constitutional standing contains three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Id.* Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Id.* Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* at 561.

6

National Indemnity challenges the "injury in fact" prong of the standing analysis. Specifically, National Indemnity claims that Muri has failed to allege an injury in fact that is fairly traceable to National Indemnity's conduct. Filing 27 at 21-22. That argument is premised, primarily, on National Indemnity's characterization of Muri as a potential *beneficiary* of the artificially inflated Valeant holding. Filing 27 at 22. In other words, National Indemnity argues that although Valeant's stock was higher than its actual worth (and thus "artificially inflated"), Muri profited by selling or trading Valeant stock at its peak. And in doing so, National Indemnity claims that Muri has suffered no cognizable injury for purposes of Article III standing. *See Brown v. Medtronic, Inc.*, 628 F.3d 451, 455 (8th Cir. 2010) ("the participant has suffered no cognizable injury if the participant sold shares at an inflated price and, therefore, was a net beneficiary of the inflated share"); *see also Taylor v. KeyCorp*, 680 F.3d 609, 613 (6th Cir. 2012); *In re Boston Scientific Corp. ERISA Litigation*, 254 F.R.D. 24 (D. Mass. 2008).

But that argument fails for at least two reasons. First, at no time during the height of Valeant's performance, and thus its inflated stock price, did Muri sell shares of the Sequoia Fund. *See* filing 31 at 11. And second, National Indemnity's characterization of Muri's claims is, quite simply, too narrow. Indeed, Muri's allegations are not that Valeant's stock price was artificially inflated, but that National Indemnity failed to prudently, and loyally, manage the funds offered under the Plan.

"[T]he gist of the question of standing is whether a plaintiff has such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination." *Braden*, 588 F.3d at 593 (cleaned up).

7

And Muri has pled facts demonstrating a personal stake in the outcome. Specifically, Muri's complaint alleges a reduction in his individual retirement account resulting from National Indemnity's alleged failure to prudently, and loyally, manage the Plan's investment options. Filing 27-16. He alleges that National Indemnity breached its duty, not only by not divesting the Fund of Valeant stock, but continuing to acquire it when it was imprudent to do so—meaning that his alleged losses are not limited to a lost opportunity for profit-taking, but also the money lost when further investment in Valeant proved ill-advised. And those allegations are enough to allege an injury in fact for purposes of Article III standing.

The evidence adduced in support of National Indemnity's factual challenge fails, not because the evidence itself is unpersuasive, but because National Indemnity's argument premised on that evidence is not responsive to Muri's allegations or the theory of his claims for relief. So, because Muri has standing to sue, his claims may proceed.

### BREACH OF FIDUCIARY DUTIES

As mentioned above, National Indemnity has moved to dismiss both Muri's "duty of prudence" and "duty of loyalty" claims, arguing that the complaint fails to state a claim for which relief can be granted.

### *(i) Duty of Prudence*

National Indemnity raises two arguments as to why, in its view, Muri's "duty of prudence" claim must be dismissed. First, National Indemnity contends that Muri has failed to allege the existence of inadequate or insufficient "procedures and processes" for monitoring the Plan's funds. Filing 27 at 24. In other words, National Indemnity argues that, to state a plausible prudence claim, Muri must allege with specificity how its policies resulted in

8

the alleged injury. *See* filing 27 at 24. And because Muri has not done so, National Indemnity urges dismissal as a matter of law. Second, National Indemnity argues that, even assuming it did not adequately monitor the Plan's funds, Muri's claim still fails because "other investment options" were available in which participants could invest their funds. Filing 27 at 26-27. Stated another way, National Indemnity argues that a plan fiduciary cannot be held liable for investing a participant's account in a single, high risk account where, as here, the Plan includes other lower risk options. *See* filing 27 at 27.

The Court will, however, deny National Indemnity's motion on those grounds. With respect to the defendant's latter argument, the availability of multiple investment options does not, as National Indemnity suggests, absolve a fiduciary of its duty of prudence. Indeed, as the Seventh Circuit has held, a fiduciary cannot "insulate itself from liability by the simple expedient of including a very large number of investment alternatives in its portfolio and then shifting to the participants the responsibility for choosing among them." *Hecker v. Deere & Co.*, 569 F.3d 708, 711 (7th Cir. 2009); *see Pfeil v. State St. Bank & Tr. Co.*, 671 F.3d 585, 597 (6th Cir. 2012). Thus, contrary to National Indemnity's argument, its offering of "eighteen other investment options" in the underlying Plan is not dispositive of Muri's breach of prudence claim. Filing 27 at 26.

That leaves National Indemnity's remaining argument: that dismissal is warranted based on Muri's failure to specify what, if any, "procedures and processes" resulted in the injury alleged. Filing 27 at 24. But before addressing that argument, it is worth reviewing the standards governing Muri's "duty of prudence" claim.

The duty of prudence requires Plan fiduciaries to discharge their duties solely in the interests of participants, and beneficiaries, "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." § 1104(a)(1)(b). The Supreme Court has noted that in "determining the contours of an ERISA fiduciary's duty, courts often must look to the law of trusts." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828 (2015). And under trust law, a fiduciary has a continuing duty to monitor trust investments and remove imprudent ones. *Id.*

In his complaint, Muri alleges that National Indemnity failed to have "any meaningful procedures or processes in place" to monitor the prudence of the Plan's investment offerings. Filing 1 at 30. To support that argument, Muri points to a myriad of "red flags" surrounding the Sequoia Fund's prudence that a reasonable review process, or monitoring system, would have revealed.[1] Specifically, Muri claims that the Sequoia Fund's investment in Valeant was a violation of its own "value policy" in which it "sells the [stock] of a company when the company shows deteriorating fundamentals, its earnings progress falls short of investment adviser's expectations or its valuation appears excessive relative to future earnings." Filing 1 at 13. Muri

---

[1] The Court acknowledges that Muri has not alleged specifics concerning National Indemnity's procedures. But, at this stage of the proceedings, that is not required. Indeed,"[n]o matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009). So, while a plaintiff must offer sufficient factual allegations to show that he is not merely engaged in a fishing expedition, the Court must also take account of his limited access to crucial information. *Id.*

also alleges that, by August 2015, Valeant's stock price was approximately ninety-eight times its 2014 earnings—suggesting that Valeant's "valuation appear[ed] excessive."[2] Filing 1 at 11, 17. And, he claims, there were various indicators that Valeant had "deteriorating fundamentals," as evidenced by external criticisms of its internal structure and CEO. Filing 1 at 22-23.

As alleged in the complaint, a reasonable review process would have uncovered these issues and prompted a prudent fiduciary to remove the Sequoia Fund as a plan option. After all, as questions and concerns surrounding Valeant stock grew, so did investment outflows from the Sequoia Fund. Specifically, Muri contends that from 2014 to 2015—at the height of Valeant scrutiny—fiduciaries withdrew over $713 million in Sequoia Fund investments. *See* filing 1 at 19. And these allegations, if substantiated, could support a finding that National Indemnity failed to conduct a regular review of investment options—which is sufficient to state a claim under the duty of prudence. *See Tibble,* 135 S. Ct. at 1828; *Braden,* 588 F. 3d at 597.

---

[2] The Court recognizes National Indemnity's argument that Muri's prudence claim is necessarily foreclosed by the Supreme Court's decision in *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014). Filing 27 at 29. In *Dudenhoeffer*, the Supreme Court determined that "where a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over– or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances." *Id.* at 2471. That is, fiduciaries are not required to "out-guess" the market. But *Dudenhoeffer* is distinguishable from the present case. Indeed, as previously discussed, Muri's complaint is not based *solely* on the argument that "the market was over[]valuing the [Valeant] stock"—*i.e.*, that Valeant's stock price was artificially inflated. *Id.* Rather, Muri contends that National Indemnity failed to adequately monitor, and investigate, the Sequoia Fund's prudence amid various warning signs—only one of which happened to be the suspected overvaluation of Valeant stock. And as Muri correctly points out, *Dudenhoeffer* does not directly address those situations.

*(ii) Duty of Loyalty*

As alluded to above, the Sequoia Fund invests in National Indemnity's parent company, Berkshire Hathaway. That relationship forms the basis of Muri's second claim for relief: breach of duty of loyalty. In other words, Muri alleges that National Indemnity breached its duty of loyalty by offering an imprudent investment option (i.e. the Sequoia Fund) for the benefit of its (National Indemnity's) parent company, Berkshire Hathaway. Filing 1 at 4.

National Indemnity claims, however, that "no plausible inference" of disloyalty can be drawn from the Sequoia Fund's ownership interest in, or close relationship to, Berkshire Hathaway. In other words, National Indemnity argues that to state a plausible loyalty claim, Muri must allege that removing the Sequoia Fund as an investment option, or placing participant contributions in an alternate fund, would have an adverse effect on Berkshire Hathaway. *See* filing 27 at 38-239. And, because Muri has not alleged how, or why, the Sequoia Fund's investment in Berkshire Hathaway impacted National Indemnity's decision to offer the fund, Muri's complaint necessarily fails. To this end, National Indemnity offers an alternative explanation for not removing the Sequoia Fund—its historically good performance. Filing 27 at 39.

The Court will, however, deny National Indemnity's motion. At this stage of the proceedings, Muri need not rebut the possibility that there may be an alternative explanation as to why National Indemnity continued to offer the Sequoia Fund as an investment option. *Braden,* 588 F.3d at 597. Indeed, requiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges would invert the principle that the "complaint is construed most favorably to the nonmoving party," *Northstar Indus., Inc. v. Merrill Lynch & Co.,* 576 F.3d 827, 833 (8th Cir. 2009), and would impose the

sort of "probability requirement" at the pleading stage which *Iqbal* and *Twombly* explicitly reject. *See Iqbal*, 556 U.S. at 667. Instead, Muri must allege sufficient facts to support an inference that in offering, and failing to remove, the Sequoia Fund as an investment option, National Indemnity failed to act in the *sole* interest of participants and beneficiaries. *See* 29 U.S.C. § 1104(a)(1)(A).

And the complaint plausibly demonstrates that National Indemnity acted in a way that benefited Berkshire Hathaway, rather than Muri and other Plan participants. Specifically, the complaint alleges that National Indemnity offered the Sequoia Fund despite the fact that it was "more expensive" and "underperformed" ten comparable mutual funds, all of which were far less concentrated, if at all, in "high-risk" Valeant stock. Filing 1 at 4, 19. And it is at least plausible, based on the facts alleged, that National Indemnity continued offering the Sequoia Fund—despite the "red flags" described above—for the benefit of its parent company, Berkshire Hathaway.

In sum, Muri has alleged enough at this early stage of the proceedings, to support a finding that National Indemnity failed to act with an "eye single" to the interests of Plan participants. *Pegram v. Herdrich*, 530 U.S. 211, 224 (2000) (fiduciaries must "exclude. . . . all consideration of the interests of third persons"); *see also Braden*, 588 F.3d at 595 (determining that the plaintiff had stated a duty of loyalty claim when the complaint alleged that the funds charged significantly higher fees than funds with similar returns, and also underperformed comparable funds). Accordingly, the Court will deny National Indemnity's motion to dismiss on those grounds. *See* 29 U.S.C. § 1104(a)(1)(A).

## MOTION TO STRIKE

As a final matter, the Court will grant National Indemnity's motion to strike Muri's jury demand. Indeed, the Eighth Circuit has concluded that claims brought under ERISA are equitable in nature and no right to jury trial attaches to those claims. *See Langlie v. Onan Corp.,* 192 F.3d 1137, 1141 (8th Cir. 1999); *see also Houghton v. SIPCO,* 38 F.3d 953, 957 (8th Cir.1994). Thus, Muri's demand for a jury trial is stricken pursuant to Rule 12(f).

## CONCLUSION

In sum, Muri's complaint plausibly alleges that National Indemnity may have failed to live up to its fiduciary obligations under ERISA. So, the Court will deny National Indemnity's motion to dismiss, but the Court will grant National Indemnity's motion to strike the demand for a jury trial.

IT IS ORDERED:

1. The defendant's motion to dismiss (filing 25) is denied

2. The defendant's motion for hearing (filing 36) is denied.

3. The defendant's motion to strike the plaintiff's jury demand is granted.

Dated this 26th day of February, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge